**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CONAIR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| COCCO HAIR PROFESSIONAL LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Conair LLC ("Conair" or "Plaintiff"), for its Complaint for patent infringement against Cocco Hair Professional LLC ("COCCO" or "Defendant"), states as follows:

## SUMMARY OF THE PATENT INFRINGEMENT CLAIMS

1. This is a patent infringement lawsuit pertaining to an invention for adjustable zero gap blade trimmers of United States Patent No. 11,104,017 ("the '017 Patent") (attached Exhibit A).

2. The technology involved in this case relates to hair trimmers, including a hair trimming system with a blade adjustment mechanism for adjusting the relative gap between a stationary blade and a movable blade to "zero" the gap between the blades.

3. Prior to the current invention, trimmers typically included a blade assembly having a stationary blade and a reciprocating blade. Several deficiencies were inherent in conventional clipper designs. For example, adjusting the length of cut between the cutting blade and stationary blade, sometimes referred to as the "gap," required the physical removal of the blade assembly

1

from the handle, and then aligning the relative positions of the blades, followed by reattachment of the blades to the handle. The operation often proved difficult.

4. The '017 Patent transformed the way a barber may "zero gap" a blade while mounted to the handle, which provides a clean, consistent and easily controllable cut.

5. COCCO sells products such as the COCCO Veloce Pro Trimmer, the COCCO Hyper Veloce Pro Trimmer, and the Veloce Lite Trimmer products, which all have the "Zero Gap T-Blade" feature. (the "COCCO Zero Gap Products").

6. The COCCO Zero Gap Products are covered by at least one claim of the '017 Patent, as shown by their identity to the patent drawings:



7. This claim for patent infringement against COCCO involves the unauthorized infringement of U.S. Patent No. 11,104,017. COCCO is manufacturing, importing, selling, and offering to sell Zero Gap Products that infringe upon the '017 Patent.

## THE PARTIES

8. Conair LLC is a limited liability company under Delaware law with its principal place of business at 1 Cummings Point Road, Stamford, CT 06902.

2

9. Conair is a leading international designer, manufacturer, and innovator of branded personal care and small kitchen appliances, cookware, hairbrushes and accessories, cosmetic bags, and travel accessories.

10. Conair sells trimmer products including products sold under the "BaByliss" brand name that are covered by the claims of the '017 Patent in the United States, including in this judicial district.

11. Upon information and belief, Dongguan Xiaoti Electric Technology Co., Ltd. ("Dongguan Xiaoti") is a company incorporated in the People's Republic of China, with a principal place of business in Dongguan City, Guangdong Province, China. Dongguan Xiaoti manufactures and supplies hair trimmer products, including the accused COCCO Zero Gap Products, that are imported, distributed, offered for sale, and sold in the United States by COCCO.

12. Cocco has a principal place of business located at 26500 Renaissance Parkway, Warrensville Heights, OH 44128.

13. At all relevant times, Cocco conducted business within the United States and engaged in commercial activities related to the professional hair and beauty industry. COCCO has a website in the United States that promotes and advertises the COCCO Zero Gap Products: www.coccohairpro.com. The link directs the user to the array of COCCO Zero Gap Products subject to this Complaint on the website in the United States, and this judicial district.

## JURISDICTION AND VENUE

14. Conair's claim for patent infringement against COCCO arises under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

15.     COCCO imports, sells, and offers for sale a consumer series of outline trimmers that feature a "Zero Gap T-Blade" in the United States.  COCCO sells at least the COCCO Veloce Pro Trimmer, the COCCO Veloce Lite Trimmer, and the COCCO Hyper Veloce Pro Trimmer, each of which having the "Zero Gap T-Blade" feature accused of infringement of the '017 Patent, in this judicial district.

16.     Additionally, this Court has personal jurisdiction over COCCO since COCCO has purposefully availed itself of the privilege of conducting activities within the state of Ohio and has contacts with the state of Ohio sufficient to give rise to, or are related to, the claim of infringement through the sale and advertisement of the COCCO Zero Gap Products in this judicial district.

17.     COCCO offers for sale and sells the COCCO Zero Gap Products in this judicial district. COCCO is subject to personal jurisdiction of this Court because, among other things, it has established sufficient contacts with Ohio and within this judicial district.

18.     COCCO has committed acts of patent infringement within Ohio, giving rise to this action. COCCO has sufficient contact with the forum meeting or exceeding the minimum threshold such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

19.     Venue is proper with respect to COCCO in this judicial district under 28 U.S.C. § 1391(b) and 1400(b) because COCCO has committed acts of infringement in this District and maintains a regular and established place of business and/or sales channels within this District.

## THE CONAIR PATENT

20.     United States Patent No. 11,104,017 is titled "Hair Cutter Blade Gap Adjustment System" and was issued on August 31, 2021.

4

21.     The '017 relates to a hair cutter system with a blade adjustment mechanism for adjusting the relative gap between blades to adjust the cutting length of the hair. ('017 Patent col. 1:7-11). The invention uses a driver tool to adjust the alignment of the blades.

22.     The Conair '017 Patent describes the benefit of the gap adjustment system in the Summary of the Invention:

> The releasable lock includes at least one alignment fastener coupled to the movable blade, and configured to releasably secure the movable blade at a plurality of select longitudinal positions. The alignment fastener may include an alignment screw.
>
>     ***
>
> The adjustment tool includes a driver releasably mounted thereto, which is manipulatable to control movement of the alignment screw. One or more alignment screws may be provided. The one or more alignment screws are accessible to the driver with the cutting assembly mounted to the strut.

(*Id.* at col. 2:17-33).

23.     FIG. 15 is a perspective view which illustrates "an exemplary method of use of the adjustment tool in adjusting the spacings of the blades of the cutting blade assembly." (*Id.* at col. 3:21-23):



U.S. Patent      Aug. 31, 2021      Sheet 11 of 12      US 11,104,017 B2

FIG. 15

24. The disclosure of the '017 Patent describes the use of the driver to position the alignment screws without the need to remove the cutting blade from the handle:

> The driver **38** is utilized to loosen both alignment screws **84**. It is noted that the presence of the strut **46** displaces the alignment screws **84** a sufficient distance from the handle **16** such that the operator can readily access the alignment screws **84** with the driver **38** without the need to first remove the blade assembly **18** from the handle **16**. Thereafter, the adjustment tool **14**, if previously removed, is positioned onto the cutting blade assembly **18** with the cutting blade assembly **18** being at least partially received within the spacing **28** of the adjustment tool **14** (FIG. 16).

(*Id.* at col. 15:2-11).

25. The embodiment of FIG. 16 shows the recess for the alignment screw and how the operator can readily access the alignment screw without the need to remove the blade from the handle:



**FIG. 16**

(*Id.* at FIG. 16).

26. The advantages of the adjustability of the gap ("g1") in the blades, as shown in FIG. 16, is described in the preferred embodiments:

> To selectively close the gap between the blade edges **70** *a*, **88** *a* of the cutting teeth **70**, **88**, the adjustment tool **14** is advanced upwardly in the longitudinal direction of the directional arrows "m" of FIGS. 16 and 18 such that

6

the upper surfaces **27** of the adjustment tool **14** and the lower surface **58** *a* of the movable blade **58** cause the movable blade **58** to move upwardly closing the gap between the outer blade edges **70** *a*, **88** *a* of the movable blade **58** and the stationary blade **62**.

The alignment screws **84** may be tightened at any time to secure the relative positions of the movable blade **58** and the stationary blade **62**. It is to be appreciated that the movable blade **58** may be adjusted to a plurality of select positions relative to the stationary blade **62** between the fully displaced condition and the approximated condition and the adjustment screws **84** to selectively adjust the length of cut as desired.

(*Id.* at col. 6:24-51).

27.     FIGS. 17 and 18 of the '017 Patent depict the difference between the gaps in the blade as shown in "g1" and "g2" as the movable blade is adjusted using the adjustment screws:



FIG. 17

FIG. 18

28.     Claim 15 of the '017 Patent recites:

15. A hair cutting system, which comprises:

7

a handle defining a longitudinal axis, the handle including a rotating shaft;

a hair cutting blade assembly including:

a fixed strut configured for securement to the handle and extend outwardly therefrom;

a stationary blade defining cutting teeth having blade edges, the stationary blade secured to the strut;

a movable blade coupled to the rotating shaft of the handle, the movable blade defining cutting teeth having blade edges and capable of reciprocal movement relative to the stationary blade in a direction transverse to the longitudinal axis defined by the handle in response to rotation of the rotating shaft, the movable blade and the stationary blade being movable relative to each other in a direction relative to the longitudinal axis defined by the handle to selectively adjust a position of the movable blade relative to the stationary blade to selectively vary a distance between the blade edges of the stationary blade and the blade edges of the movable blade; and

one or more alignment fasteners to releasably secure the movable blade at a plurality of select positions relative to the stationary blade;

wherein the strut is configured to space the cutting blade assembly relative to the handle along the longitudinal axis to facilitate access to the one or more fasteners without requiring removal of the cutting blade assembly from the handle.

**COUNT FOR PATENT INFRINGEMENT
AGAINST COCCO
(Infringement of U.S. Patent No. 11,104,017)**

**Infringement**

29.     The COCCO Zero Gap Products, including but not limited to the COCCO Veloce Pro Trimmer, the COCCO Veloce Lite Trimmer and the COCCO Hyper Veloce Pro Trimmer, literally and directly infringe at least Claims 15, 16, 17, 18 and 19 of the '017 Patent in violation of 35 U.S.C. § 271(a).  Discovery may disclose other products that infringe one or more claims of the '017 Patent.

8

30.     The COCCO Zero Gap Products include a "handle defining a longitudinal axis, the handle including a rotating shaft" as recited in claim 15 of the '017 Patent:




31.     The COCCO Zero Gap Products include a "hair blade assembly" as recited in claim 15 of the '017 Patent:



32.     The COCCO Zero Gap Products include a "fixed strut that is configured to be secured to the handle and extended outwardly therefrom" as recited in claim 15 of the '017 Patent:





33.     The COCCO Zero Gap Products include a "stationary blade defining cutting teeth having blade edges, the stationary blade secured to the strut" as recited in claim 15 of the '017 Patent:



10

34.     The COCCO Zero Gap Products include a "movable blade coupled to the rotating shaft of the handle, the movable blade defining cutting teeth having blade edges and capable of reciprocal movement relative to the stationary blade in a direction transverse to the longitudinal axis defined by the handle in response to rotation of the rotating shaft" as recited in claim 15 of the '017 Patent:



As shown above, the blade edges of the movable blade are capable of reciprocal movement relative to the stationary blade in a direction transverse to the longitudinal axis defined by the handle.  The movable blade has cutting teeth including blade edges that are capable of reciprocal movement relative to the stationary blade.

35.     The COCCO Zero Gap Products include a "movable blade and a stationary blade being movable relative to each other to selectively adjust a position of the movable blade relative to the stationary blade to selectively vary a distance between the blade edges of the stationary blade and the blade edges of the movable blade" as recited in claim 15 of the '017 Patent:



36.     The COCCO Zero Gap Products include "one or more alignment fasteners to releasably secure the movable blade at a plurality of select positions relative to the stationary blade" as recited in claim 15 of the '017 Patent:



37.     The COCCO Zero Gap Products include a "strut [that] is configured to space the cutting blade assembly relative to the handle along the longitudinal axis to facilitate access to the one or more fasteners without requiring removal of the cutting blade assembly from the handle" as recited in claim 15 of the '017 Patent:



To facilitate access to the one or more fasteners without requiring removal of the cutting blade assembly

38.     The COCCO Zero Gap Products satisfy each and every element of Claim 15 of the '017 Patent and therefore directly and literally infringe Claim 15 of the '017 Patent.

39.     The COCCO Zero Gap Products satisfy each and every element of Claims 16, 17, 18 and 19 of the '017 Patent and therefore directly and literally infringe Claims 16, 17, 18 and 19 of the '017 Patent.

40.     The COCCO Zero Gap Products infringe at least Claims 15, 16, 17, 18 and 19 of the '017 Patent in violation of 35 U.S.C. § 271(a).

41.     If any of the claim elements of the asserted claims of the '017 Patent are not found in the COCCO Zero Gap Products, there is infringement under the doctrine of equivalents.

42.     COCCO had actual knowledge of the '017 Patent and its infringement thereof at least as early as June 14, 2024, when COCCO received a written notice letter from Conair's counsel

13

identifying COCCO's Veloce Pro Trimmer and COCCO Hyper Veloce Pro Trimmer products, and providing a detailed infringement analysis with attached claim charts. COCCO continued to infringe the '017 Patent by making, using, offering for sale, and selling the COCCO Zero Gap Products.

## DAMAGES

43.    The actions of infringement of the '017 Patent by COCCO have injured Conair and Conair is entitled to recover damages to compensate it for such infringement, but in no event less than a reasonable royalty as established under 35 U.S.C. § 284.

44.    The deliberate, intentional, and willful infringement by COCCO of one or more claims of the '017 Patent after having knowledge of the '017 Patent entitles Conair to enhanced damages under 35 U.S.C. § 284.

45.    Plaintiff's injury will continue unless or until this Court enters an injunction against further infringement by COCCO.

46.    Plaintiff has complied with any applicable provisions of 35 U.S.C. § 287 by marking products covered by the '017 Patent with the patent number and placing COCCO on actual notice of infringement of the patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Conair, prays for the following relief:

a.    A judgment finding that COCCO has infringed the asserted claims of the '017 Patent under 35 U.S.C. § 271(a) as pled above;

b.    A judgment that the '017 Patent is valid and enforceable;

c.    A permanent injunction enjoining COCCO, its agents, officers, assigns and

14

others acting in concert with them, from infringing the '017 Patent;

d.     An award of damages adequate to compensate Conair for the infringement of the '017 Patent that has occurred;

e.     An award of pre-judgment interest and post-judgment interest on the damages awarded;

f.     A judgment that Conair is entitled to an award of enhanced damages under 35 U.S.C. § 284 to be increased at the discretion of the trial court up to three times the damages found;

g.     A determination that this is an exceptional case and an award of Conair's attorneys' fees pursuant to 35 U.S.C. § 285 and any other applicable statute or law, and an award to Conair of its fees and costs; and

h.     Such other further relief as the Court deems reasonable.

## <u>JURY DEMAND</u>

Conair demands a trial by jury on all issues so triable to a jury.

Dated: June 18, 2026

Respectfully submitted,

*/s/    Jason R. Bristol*
Jason R. Bristol, Esq. (0072989)
(jbristol@crklaw.com)
Cohen Rosenthal & Kramer LLP
3208 Clinton Avenue
One Clinton Place
Cleveland, Ohio 44113
Telephone and Facsimile: (216)815-9500

*/s/    Dean D. Niro*
Dean D. Niro (dniro@vvnlaw.com)

15

Nicholas D. Niro (nniro@vvnlaw.com)
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 S. Wacker Drive, Suite 2200
Chicago, IL 60606
Telephone: (312) 236-0733

**Attorneys for Plaintiff Conair LLC**